**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTOPHER H. HANSEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOSHUA NIEVES, et al.,<br><br>Defendants. | 2:08-CV-479 JCM (RJJ) |

**ORDER**

Presently before the court is plaintiffs Christopher, Dawn, and Joshua Hansen's motion for partial summary judgment filed on February 11, 2010. (Doc. #57). Defendants Las Vegas Metropolitan Police Department (hereinafter "Metro"), and individual officers Jivapong, Ruiz, Seed, and Pinjuv filed a response (Doc. #71). Plaintiffs filed a reply (Doc. #74).

Also before the court is Metro's officers Jivapong, Ruiz, Seed, and Pinjuv's motion for summary judgment. (Doc. #58). Plaintiffs filed a response (Doc. #70) and Metro and its officers filed a reply (Doc. #76).

BACKGROUND

On March 13, 2007, plaintiffs Christopher H. Hansen, his wife Dawn, and their son Joshua (collectively "plaintiffs"), were in their home at 9554 Iris Flat Court. At approximately 9:30 PM, plaintiff Dawn took the family dog outside, when she heard growling and scratching noises in the backyard. Plaintiff Dawn saw neighbor Joshua Nieves' pit bull coming toward her. The pit bull attacked the Hansen's dog. As Dawn tried to separate the pit bull from her dog, the pit bull knocked her backward, and she began screaming.

**James C. Mahan**
**U.S. District Judge**

1    Plaintiff Joshua Hansen, upon hearing his mother's screams, went to the backyard, and
2 successfully separated the Hansen's dog from the pit bull. Plaintiff Christopher, upon hearing his
3 wife's screams, grabbed his .22 carbine rifle from the bedroom, and ran to the backyard.
4 Christopher and Joshua Hansen kept the pit bull at bay in their backyard.

5    Nieves then came to the Hansens' gate to ask the Hansens to release his dog. When
6 Nieves attempted to retrieve his pit bull, Christopher threatened to shoot Nieves with a firearm.
7 Dawn called 911 for assistance regarding the pit bull. Shortly thereafter a neighbor called 911
8 and reported that two neighbors were fighting, and a firearm was involved.

9    Metro officers Jivapong, Ruiz, Seed, and Pinjuv arrived on the scene, and called the
10 Hansen's residence, requesting that Dawn exit the residence unarmed.  Although Dawn
11 complied, she also became extremely agitated. The officers patted her down and found no
12 weapons.

13    Shortly thereafter, Joshua Hansen exited the house. Joshua was never touched by a police
14 officer, or told he could not move around freely. The police then ordered Christopher to exit the
15 backyard. Christopher consented to a pat down. Christopher never informed any of the police
16 officers of his purported medical limitations. After Christopher was searched, Dawn began
17 screaming at Sergeant Pinjuv. Sergeant Pinjuv informed her that if she did not calm down, he
18 would place her in the back of the police car.

19    Christopher then sat down due to purported pain in his back and shoulders, but never
20 requested medical attention. Sergeant Pinjuv allowed Dawn to bring Christopher a chair.

21    At this point Sergeant Pinjuv asked Joshua Hansen to enter the home and retrieve the
22 weapons he had used earlier in the evening. Joshua Hansen retrieved a .357 hand gun that he
23 admitted he owned and had not registered in Clark County. Sergeant Pinjuv then impounded the
24 hand gun and gave Joshua Hansen a receipt to retrieve it.

25    To date, plaintiff Joshua Hansen states that he has not retrieved the weapon because he
26 does not trust people who work for the government. No parties were handcuffed or placed under
27 arrest. The officers concluded that no one violated the law. Christopher later went to the hospital
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  and was diagnosed with a back strain as well as degenerative and chronic back problems.
2  Christopher subsequently underwent rotator cuff surgery.
3      Following the incident, the Hansens filed complaints with the Citizens Review Board and
4  Las Vegas Metropolitan Police Department of Internal Affairs. The Internal Affairs department
5  and the Citizens Review Board found no wrongdoing on behalf of the officers.

## ANALYSIS

7      Federal Rule of Civil Procedure 56 allows a court to enter summary judgment when there
8  is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of
9  law. Fed. R. Civ. P. 56; *Celotex Corp. V. Catrett*, 477 U.S. 317 (1986). The party moving for
10 summary judgment has the initial burden of showing the absence of a genuine issue of material
11 fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The burden then shifts to the respondent
12 to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty
13 Lobby, Inc.* 477 U.S. 242 (1986).
14     Plaintiffs allege a series of federal and state law claims against defendant Metro and its
15 officers in their individual capacities. Defendants Metro and the four individual officers are
16 entitled to summary judgment on all claims as explained below.

17     **A.    18 U.S.C. § 242 Criminal Statute**

18     Defendants Metro and its officers are entitled to summary judgement on plaintiffs' 18
19 U.S.C. § 242 claim. 18 U.S.C. § 242 is a criminal statute which provides for fines and
20 imprisonment for one who "under color of law . . . willfully subjects any person to the
21 deprivation of any rights, privileges, or immunities secured or protected by the Constitution or
22 laws of the United States." 18 U.S.C. § 242. The Ninth Circuit further holds that 18 U.S.C. § 242
23 is a criminal statute that does not give rise to civil liability. *Allen v. Gold Country Casino*, 464
24 F.3d 1044, 1047 (9th Cir. 2006).
25     Plaintiffs have no standing to bring a criminal cause of action against defendants Metro
26 and its individual officers. Therefore, defendants Metro and the individual officers are entitled to
27 summary judgment on the 18 U.S.C. § 242 claim.

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    **B.    42 U.S.C. § 1983 Claims Against Individual Officers**

2    The individual officers are entitled to summary judgment on plaintiffs' claims under 42
3    U.S.C. § 1983. To make out a prima facie case under 42 U.S.C. § 1983, a plaintiff must show
4    that defendants (1) acted under color of law, and (2) deprived the plaintiff of a constitutional
5    right. *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). Although defendant officers
6    acted under color of law, they did not violate plaintiff's constitutional rights.

7    If a constitutional violation did occur, the defendant officers may raise the affirmative
8    defense of qualified immunity, which protects them in the course of performing the discretionary
9    duties of their office. *Butler v. Elle*, 281 F.3d 1014 (9th Cir. 2002). This court determines
10   whether qualified immunity applies by examining (1) whether the violated right was clearly
11   established, and (2) whether a reasonable public official would have believed that the particular
12   conduct at issue was lawful. *Id* at 1021. If either the right was not clearly established or a
13   reasonable officer would have believed the particular conduct was unlawful, the defendant is not
14   entitled to summary judgement. The doctrine of qualified immunity is more than a defense to
15   liability–it protects parties from being haled into court altogether. *Saucier v. Katz*, 533 U.S. 194,
16   201 (2001).

17   Here, the undisputed facts show that the officers arrived at a highly volatile scene,
18   conducted an investigation, and determined that no crimes had been committed. As stated below,
19   no violation of a clearly established right occurred, and a reasonable public official would have
20   believed that the conduct of the police officers was lawful. Accordingly, qualified immunity bars
21   all claims against defendant officers Jivapong, Ruiz, Seed, and Pinjuv. Metro under 42 U.S.C. §
22   1983. This court will, however, address the § 1983 claims on the merits.

23               **(1)    Fourth Amendment Unlawful Search and Seizure and Unlawful**
24                       **Detention of Christopher, Dawn, and Joshua Hansen**

25   Defendant officers did not unlawfully seize and detain plaintiffs Christopher, Dawn and
26   Joshua Hansen. The general rule is that "searches and seizures conducted outside judicial
27   process, without a warrant are per se unreasonable under the Fourth Amendment." *Minnesota v.*

28

**James C. Mahan**
**U.S. District Judge**                                                  - 4 -

1  *Dickerson*, 508 U.S. 366, 373 (1993). However, if an officer possesses sufficient information to
2  justify a stop, an officer may make a brief investigatory stop of an individual. *Terry v. Ohio*, 392
3  U.S. 1, 21-22 (1968). An officer must have at least a minimal level of objective justification for
4  making a "Terry" stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The Ninth Circuit holds
5  that an officer, even acting without a search warrant, has the authority to detain the occupants of
6  the premises while a proper search is conducted, regardless of whether or not the occupants
7  appear dangerous. *Sanchez v. Canales*, 547 F.3d 1169. Citing the Supreme Court, the Ninth
8  Circuit noted that such a detention is constitutional regardless of whether the police had a
9  warrant because "the additional intrusion caused by detention is slight while the justifications for
10 detention are substantial." *Id* at 1174.

11       The officers lawfully detained Christopher and Joshua Hansen. The detention was in
12 response to complaints of a heated neighbor dispute involving firearms and threats. According to
13 a neighbor's 911 call and the initial interview with Nieves, the officers had reason to believe that
14 a potential assault with a deadly weapon had occurred. Christopher admits that he threatened to
15 shoot Nieves, if Nieves entered the Hansen's backyard. The officers controlled a potentially
16 volatile situation, thoroughly investigated the premises, concluded that all parties had acted
17 lawfully, and released all individuals.

18       The officers furthermore lawfully detained Dawn. She was extremely agitated when the
19 officers arrived on the scene, and the police felt the need to prevent her from accessing the
20 weapons that were inside the house. Again, the officers conformed to the *Sanchez* holding and
21 took "reasonable action to secure the premises and ensure their own safety and the efficiency" of
22 the investigation. *Id.* 574 F.3d at 1175.

23       Plaintiffs further claim that their detention violated state and federal limits for length of a
24 detention. This claim, however, is without merit. Under Nevada law, a person "must not be
25 detained longer than is necessary to effect the purposes of [the investigation] and in no event
26 longer than 60 minutes." NRS 171.123(4). Federal law permits a police officer to detain an
27 individual during a "Terry" stop for the amount of time necessary to investigate the report and
28

James C. Mahan
U.S. District Judge

- 5 -

1  determine whether a crime has been committed. *Gallegos v. City of Los Angeles*, 308 F.3d 987,
2  992 (9th Cir. 2002).

3       Here, both Dawn and Christopher agree that the entire detention lasted more than twenty
4  minutes but "less than an hour." (Ex. A at 131; Ex. B at 79-80). Therefore there is no evidence
5  that the length of the detention violated either the Federal Constitution or Nevada law.

6       **(2)    Fourth Amendment Unlawful search of Christopher Hansen**

7       The officers did not unconstitutionally search Christopher Hansen in violation of his
8  Fourth Amendment right. During a "Terry" stop, if an officer has a reasonable suspicion that the
9  stopped person may be armed or dangerous, the officer may conduct a protective frisk. *Terry*,
10  392 U.S. at 24. Courts must examine the totality of the circumstances of each case to see whether
11  the detaining officer has a particularized and objective basis "to believe that he is dealing with an
12  armed and dangerous person. *Id.* at 1868. The officer must articulate some facts suggesting that
13  the person is armed and dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979). Furthermore,
14  police need not advise suspects of their right not to cooperate and refuse a consent to searches.
15  *Florida v. Bostick*, 501 U.S. 429 (1991).

16       The protective frisk was constitutional. Christopher admits that he consented to the frisk.
17  He states that the officers "wanted to frisk me" and he "felt like this was a reasonable request and
18  allowed it." (Ex. N at 9, 11, 26-28).

19       **(3)    Fourth Amendment Excessive Force on Christopher Hansen**

20       Officer Jivapong did not violate Christopher's Fourth Amendment rights by using
21  excessive force during the pat down. The use of force by an officer conducting a pat down must
22  be "objectively reasonable." *Graham v. Connor*, 490 U.S. 386 (1990). The Supreme Court
23  declared that all uses of force must be judged by the totality of the circumstances and based only
24  upon the facts known to the officer at the time the force is used. *Id* at 396.

25       According to the undisputed facts, the officers knew a heated argument had occurred
26  between the Hansens and Nieves, and that at least some of the parties had firearms. There is no
27  evidence that Jivapong used excessive force in conducting the pat down or intentionally caused

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  Christopher unnecessary pain. Although Christopher now complains of back and shoulder
2  injuries, it is undisputed that Christopher never informed Jivapong of any physical limitation, or
3  that he was suffering pain up to this point in the pat down (Ex. A at 105-06). Furthermore,
4  Christopher does not believe that Jivapong intended to cause him harm. *Id.*

### (4)   Verbal Treatment violating Dawn's Constitutional Rights

Dawn claims her constitutional rights were violated when Officer Pinjuv threatened to put her into the back of the police car during the course of the investigation. The Ninth Circuit holds that vulgar language and threats do not amount to a constitutional violation. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). According to all parties, Dawn screamed at Sergeant Pinjuv, asking him "what the hell are you doing?" (Ex. N at 64-65). Sergeant Pinjuv sternly warned Dawn that if she did not calm down, he would place her in the back of the patrol car. The evidence demonstrates that Sergeant Pinjuv was attempting to ensure the safety of everyone involved in the situation.

### (5)   Fourth and Second Amendment Violations for Seizing Weapons and Scanning their Serial Numbers

Plaintiffs' challenge under the Second Amendment fails because Sergeant Pinjuv is protected by qualified immunity. Plaintiffs' challenge under the Fourth Amendment fails because voluntary consent to a search is a well-established exception to the warrant requirement under the Fourth Amendment. *Schneckloth v. Busamonte*, 412, U.S. 218, 219 (1973).

Plaintiffs' Second Amendment claim is not barred by the first part of the two-part qualified immunity test, because an individual's right to possess firearms is a clearly established constitutional right. *McDonald v. Chicago*, 2010 U.S. LEXIS 5523 (U.S. June 28, 2010). However, plaintiffs' claim is barred by the second part of the qualified immunity test, because Sergeant Pinjuv reasonably believed he was acting lawfully. Sergeant Pinjuv diffused a volatile argument between neighbors, and afforded Joshua Hansen a reasonable means of retrieving his unregistered firearm. Accordingly, Sergeant Pinjuv is protected by qualified immunity.

Plaintiffs may not challenge the police action here under the Fourth Amendment because Joshua consented to the protective frisk. (Ex. D at 78). He further admits that when asked to retrieve

**James C. Mahan**
**U.S. District Judge**

- 7 -

the guns, he either did not protest, or responded "okay." (*Id.*)

### (6) 42 U.S.C. § 1985 and 1986: Engaging in a Civil Conspiracy and Failing to Prevent the Conspiracy

Defendants Metro and the individual officers are entitled to summary judgment on plaintiff's 42 U.S.C. § 1985 and § 1986 claims. In order to bring a cause of action under 42 U.S.C. § 1985, a plaintiff must prove (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of the equal privileges and immunities under the law; (3) an act in furtherance of this conspiracy; and (4) whereby a person is injured in his person or property or deprived of any right or any privilege of a citizen of the United States. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1536 (9th Cir. 1992). In addition to identifying a legally protected right "a plaintiff must demonstrate a deprivation of that right motivated by some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). 42 U.S.C. § 1986 permits recovery by plaintiff when individuals who have knowledge of, and power to prevent a § 1985 conspiracy neglect or refuse to act.

Here, plaintiffs do not adequately allege that they belong to any racial group or a protected class. There is no evidence in the record to support a finding of racial or class-based, invidiously discriminatory animus. Therefore, plaintiffs' § 1985 claim fails as a matter of law. Without a valid § 1985 claim, plaintiffs' § 1986 claim also fails as a matter or law.

### (7) Defendant Metro not Liable for Constitutional Claims

Metro is entitled to summary judgment on all of the constitutional claims against it. The Supreme Court holds that there is no respondeat superior liability against municipalities under § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). To impose liability, a plaintiff must prove the existence of a policy or custom of the municipality which caused the constitutional violation at issue. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Finally, if no constitutional violation occurred, there can be no liability on the part of the municipality. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986).

Here, there is no evidence that any of the defendant officers violated the plaintiffs

James C. Mahan
U.S. District Judge

- 8 -

constitutional rights, let alone any evidence of the existence of a policy in violation of the Constitution. Therefore, Metro cannot be held liable for constitutional violations because plaintiffs have failed to prove any constitutional violations by the individual officers.

### C. State Law Claims

#### (1) NRS 41.032 Immunizes Metro and its Officers

Metro and its officers are immunized from suit by NRS 41.032, and therefore entitled to discretionary functional immunity. Nevada permits for respondeat superior liability against a municipality such as Metro in a state law claim. Therefore, Metro and the individual officers are treated the same for the purposes of the claims against them.

Although Nevada has generally waived its sovereign immunity, no action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance . . . [of] a discretionary function or duty on the part of the State or any of its agencies . . . or of any officer . . . whether or not the discretion involved is abused." NRS 41.032(2).

The Nevada Supreme Court holds that discretionary functional immunity applies when: (1) the act alleged involves elements of judgment or choice; and (2) the act is of the kind that discretionary-function immunity was intended to protect. *Martinez v. Maruszczak*, 168 P.3d 727 (Nev. 2007). The Nevada Supreme Court further holds that the manner in which police conduct an investigation and subsequent arrest is immunized by NRS 41.032. *Maturi v. Las Vegas Metro. Police Dep't.*, 110 Nev. 307, 309 (Nev. 1994).

Plaintiffs' state law claims fail because Metro and its officers are immunized by NRS 41.032. Plaintiffs' claims generally concern the detention and amount of force used by the officers. Although Metro and its officers are immunized from suit on the state law claims under NRS 41.032, this court will address the state law claims on the merits.

#### (2) Plaintiffs' False Report Claims (NRS 197.130, NRS 197.140, NRS 197.200, NRS 197.220)

NRS 197, entitled "Crimes by and Against Executive Power of the State," is a criminal statute. Subject to a few exceptions, criminal statutes cannot be enforced by civil actions. *United*

James C. Mahan
U.S. District Judge

- 9 -

*States v. Claflin*, 97 U.S. 546 (1979). The Hansens, a private party, may not enforce a criminal statute. Plaintiffs claims under NRS 197 fails as a matter of law.

### (3)  Intentional Torts

Plaintiffs' claims of battery and intentional infliction of emotional distress fail as a matter of law. In order to establish a battery claim, a plaintiff must show the act (1) intended to cause harmful or offensive contact; (2) caused harmful or offensive contact; and (3) such contact did occur." NRS § 200.400.

Plaintiffs here fail to state a battery claim because the record lacks any evidence of the intent element of battery. All evidence here supports the conclusion that Jivapong intended to perform a standard low-profile pat down of Christopher. (Ex. A at 151). Therefore, plaintiffs' battery claim fails as a matter of law.

Plaintiffs' claim of intentional infliction of emotional distress (hereinafter "IIED") also fails as a matter of law. To succeed on an IIED claim, plaintiffs must establish: (1) LVMPD's conduct was extreme and outrageous; (2) the defendant officers either intended or recklessly disregarded the causing of distress; (3) the plaintiffs actually suffered severe or extreme emotional distress; and (4) that defendant officers conduct actually or proximately caused the distress. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983). The measure of extreme or outrageous conduct is whether the conduct that goes "beyond all possible bounds of decency, is atrocious and utterly intolerable." *Olivero v. Lowe*, 116 Nev. 395, 398 (Nev. 2000).

Here, there is no evidence the officers' actions went "beyond all possible grounds of decency." The evidence shows that the officers arrived at a highly volatile scene, conducted an investigation, determined that no crimes had been committed, and left the scene. Christopher further admits that the officers did not intend to cause him harm. Defendant officers never handcuffed anyone, put anyone in a police vehicle, arrested anyone, or used physical force beyond a pat down.

### (4)  Civil Conspiracy

Plaintiffs further contend that defendant officers engaged in a civil conspiracy to "accomplish the unlawful objective of depriving the plaintiffs of their rights." (Compl. ¶ 129). An actionable civil

**James C. Mahan**
**U.S. District Judge**

- 10 -

conspiracy "consists of a combination of two or more persons who, by come concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1993). Furthermore, conspiracy liability can arise only when there is the commission of a wrongful, actionable tort. *Harrell v. 20 th Century Ins. Co.*, 934 F.2d 203, 208 (9th Cir. 1991).

Plaintiffs' conspiracy claim fails because plaintiff fails to prove an underlying tort. Furthermore, plaintiffs have not proffered any evidence that the four officers entered into an agreement to commit any intentional tort. Therefore, because plaintiffs cannot prove an actionable tort or an agreement to commit a battery or IIED, this conspiracy claim fails and summary judgment is appropriate.

## CONCLUSION

UPON CONSIDERATION of plaintiffs' motion (Doc. #57), defendants Metro and the individual officers' motion (Doc. #58), and the papers and pleadings on file in this matter,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for summary judgment (Doc. # 57) be, and the same hereby is, DENIED as against defendants Metro and the named officers.

IT IS FURTHER ORDERED that defendant Metro's motion for summary judgment (Doc. #58) be, and the same hereby is, GRANTED in its entirety.

DATED August 6, 2010.

_/s/ James C. Mahan_
**UNITED STATES DISTRICT JUDGE**